**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

| | |
|---|---|
| JORGE GUZMAN,<br>          Appellant,<br><br>          v.<br><br>DEPARTMENT OF HOMELAND<br>     SECURITY,<br>          Agency. | DOCKET NUMBER<br>SF-0752-15-0170-X-1<br>SF-0752-15-0170-C-1<br><br><br>DATE:  November 14, 2025 |

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

James Walsh, Esquire, Long Beach, California, for the appellant.

Michael Zweiback, Esquire, and Ashley Amell, Los Angeles, California, for the appellant.

Thomas Anthony Schramm, Detroit, Michigan, for the agency.

Cary Elizabeth Zuk, San Francisco, California, for the agency.

John B. Barkley, Phoenix, Arizona, for the agency.

### BEFORE

Henry J. Kerner, Vice Chairman
James J. Woodruff II, Member

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law.  Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions.  In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law.  *See* 5 C.F.R. § 1201.117(c).

**FINAL ORDER**

On January 6, 2023, the Board issued an order denying the agency's petition for review of the administrative judge's August 3, 2018 compliance initial decision. *Guzman v. Department of Homeland Security*, MSPB Docket No. SF-0752-15-0170-C-1, Compliance Petition for Review (CPFR) File, Tab 10, Order (Order); *Guzman v. Department of Homeland Security*, MSPB Docket No. SF-0752-15-0170-X-1, Compliance Referral File (CRF), Tab 1; *Guzman v. Department of Homeland Security*, MSPB Docket No. SF-0752-15-0170-C-1, Compliance File (CF), Tab 21, Compliance Initial Decision (CID). For the reasons discussed below, we now find the agency in compliance and DISMISS the appellant's petition for enforcement and the compliance petition for review.

**DISCUSSION OF ARGUMENTS AND EVIDENCE OF COMPLIANCE**

On September 29, 2017, the administrative judge issued an initial decision reversing the appellant's involuntary removal from his position as an Assistant Special Agent in Charge and granting his request for corrective action, holding that the agency failed to prove its charge of lack of candor against the appellant and that the appellant proved his allegation of retaliation for whistleblowing. *Guzman v. Department of Homeland Security*, MSPB Docket No. SF-0752-15-0170-I-2, Initial Appeal File, Tab 39, Initial Decision (ID). The initial decision ordered the agency to cancel the removal and retroactively restore the appellant effective November 21, 2014; pay the appellant the appropriate amount of back pay with interest; and adjust benefits with appropriate credits and deductions. ID at 39. The initial decision became the final decision of the Board when neither party filed a petition for review. 5 C.F.R. § 1201.113.

On December 13, 2017, the appellant filed a petition for enforcement, alleging that, although the agency had issued a Standard Form 50 (SF-50) cancelling his voluntary retirement, effective November 21, 2014, CF, Tab 6 at 31, the agency had asserted that because the appellant had passed the date of his

57th birthday, under 5 U.S.C. § 8425(b)(1), he could not be reinstated in his prior position as a law enforcement officer, CF, Tab 1 at 5. The agency therefore mandatorily retired him effective July 31, 2016. *Id.* On August 3, 2018, the administrative judge issued a compliance initial decision granting the petition for enforcement. CID at 1. The administrative judge held that § 8425(b)(1) required the agency to give the appellant 60 days' notice and refrain from mandatorily separating him until the end of the notice period. *Id.* at 7. She ordered the agency to restore the appellant to duty, provide him with the appropriate notice under 5 U.S.C. § 8425, allow him to seek an exemption from mandatory retirement as provided in the statute, and provide him with back pay and regular pay until, at minimum, the end of the 60-day notice period. *Id.* at 7-8.

The agency filed a petition for review of the compliance initial decision.[2] CPFR File, Tab 1. On January 6, 2023, the Board denied the agency's petition for review and affirmed the compliance initial decision as modified, due, in part, to the changed circumstances since the issuance of the compliance initial decision. Order at 1-2. Specifically, on July 28, 2019, while the petition for review was pending, the appellant turned 60 years old, which under the statute is the mandatory retirement age if the agency head grants an exemption request. *Id.* at 9. Accordingly, the Board directed the agency to provide meaningful status quo ante relief within 60 days of the date of the Order by:

> (1) Canceling the November 21, 2014 retirement, (2) providing the appellant with the appropriate amount of back pay, with interest, and adjusting his benefits with appropriate credits and deductions . . . for

---

[2] As noted in the compliance initial decision, the Board's regulations provide that, upon a finding of noncompliance, the party found to be in noncompliance must do the following: (i) to the extent that the party decides to take the actions required by the initial decision, the party must submit to the Clerk of the Board, within the time limit for filing a petition for review under 5 C.F.R. § 1201.114(e), a statement that the party has taken the actions identified in the initial decision, along with evidence establishing that the party has taken those actions; and (ii) to the extent that the party decides not to take all of the actions required by the initial decision, the party must file a petition for review under the provisions of 5 C.F.R. §§ 1201.114-1201.115. 5 C.F.R. § 1201.183(b)(1).

the period of November 21, 2014, through July 31, 2019, and (3) processing his mandatory retirement, effective July 31, 2019.

*Id.* at 10.

On June 26, 2023, after the parties mediated a related matter, the agency submitted evidence and a narrative statement regarding its compliance with the January 6, 2023 Order. CRF, Tab 4. The agency stated that it had cancelled the November 21, 2014 retirement action, issued an SF-50 reflecting the appellant's mandatory retirement on July 31, 2019, and on June 8, 2023, issued him net back pay and interest, with appropriate deductions, for the relevant period, in the amount of $365,121.05. *Id.* at 5-6, 16. On July 16, 2023, the appellant filed a pleading contending that the agency was still not in compliance, challenging the agency's back pay calculations on multiple grounds. CRF, Tab 5.

On August 16, 2023, the Board ordered the agency to provide further evidence and explanation regarding its compliance. CRF, Tab 6 at 2-3. The agency filed additional evidence of compliance on November 20, 2023, and after requesting and receiving an extension of time to respond, the appellant responded to the agency's evidence, again challenging the calculations of the back pay on multiple grounds. CRF, Tabs 9-12. In November 2023, the agency issued the appellant his lump sum annual leave payment for 2019 in the amount of $35,100.83; the lump sum annual leave payment for 2020 in the amount of $14,114.11; and the lump sum Law Enforcement Availability Pay (LEAP) payment in the amount of $1,032.24. CRF, Tab 16 at 18.

On March 15, 2024, the appellant filed a motion to show cause and hold the agency in contempt, requesting that the agency be held in contempt, with appropriate sanctions imposed, or for the Board to grant judgment of a back pay award using the appellant's calculations. CRF, Tab 13 at 22. The appellant stated that he had returned all of the back pay and lump sum payments that the agency had issued to him because, in his view, they were incorrect. *Id.* at 24. After requesting

and receiving an extension of time, the agency responded, and the appellant filed a reply. CRF, Tabs 14-17.

On July 18, 2024, the Board issued an order denying the motion to show cause and hold the agency in contempt, and ordering the agency to provide further evidence of compliance. CRF, Tab 18. The Board held that: (1) the agency used the correct pay scales to calculate the back pay; (2) the appellant was not entitled to a tax "gross-up"; (3) the agency had used the correct rate of interest in its calculations of the appellant's interest on the back pay and properly did not pay interest on its lump sum payment; (4) the agency was in compliance with respect to its lump-sum payment of leave and LEAP; (5) the appellant was not entitled to a lump-sum payment for his sick leave; (6) the agency was in compliance with respect to the appellant's health care benefits; and (7) the agency's attempt to pay the appellant the back pay was not in bad faith. *Id.* at 5-13. The Board directed the agency to:

(1) Provide an explanation of why LEAP wages of $752.80 were deducted from the 2014 back pay amount;

(2) Recalculate the interest due if the appellant's back pay amount changed based on number (1) above;

(3) With respect to the appellant's Thrift Savings Plan (TSP) account, address the appellant's calculations, explain why its evidence lists three different versions of appellant's wages, as well as different amounts for appellant's TSP contributions, and explain whether it has enabled the restoration of the appellant's TSP withdrawals to his account.

(4) Provide a clear explanation and calculation of retirement contributions separate from the TSP;

(5) Provide a detailed accounting of how Healthcare Insurance Tax or Medicare Tax was calculated;

(6) Provide a detailed accounting of the calculations for Federal and state income tax withheld; and

(7) Explain whether the appellant's revised retirement date, salary information, sick leave accrued during the back pay period, and any other pertinent information have been reported to the Office of Personnel Management (OPM) so as to effect any required adjustments to his annuity.

*Id.* at 13.

The agency responded to the Board's July 18, 2024 Order on September 16, 2024, and the appellant filed an additional response on October 7, 2024. CRF, Tabs 22, 24.

## ANALYSIS

When, as here, the Board finds a personnel action unwarranted, the aim is to place the appellant, as nearly as possible, in the situation he would have been in had the wrongful personnel action not occurred. *Vaughan v. Department of Agriculture*, 116 M.S.P.R. 319, ¶ 5 (2011); *King v. Department of the Navy*, 100 M.S.P.R. 116, ¶ 12 (2005), *aff'd per curiam*, 167 F. App'x 191 (Fed. Cir. 2006). The agency bears the burden to prove compliance with the Board's order by a preponderance of the evidence.[3] *Vaughan*, 116 M.S.P.R. 319, ¶ 5; 5 C.F.R. § 1201.183(d). An agency's assertions of compliance must include a clear explanation of its compliance actions supported by documentary evidence. *Vaughan*, 116 M.S.P.R. 319, ¶ 5. The appellant may rebut the agency's evidence of compliance by making specific, nonconclusory, and supported assertions of continued noncompliance. *Id.*

Backpay and Interest

The appellant argued that the agency had improperly allowed him "less than the biweekly pay cap in pay period 23 of 2014," because the agency had deducted LEAP wages for that pay period in the amount of $752.80. CRF, Tab 12 at 42.

---

[3] A preponderance of the evidence is the degree of relevant evidence that a reasonable person, considering the record as a whole, would accept as sufficient to find that a contested fact is more likely to be true than untrue. 5 C.F.R. § 1201.4(q).

5 U.S.C. § 5547(a) and 5 C.F.R. § 550.105 permit certain employees to receive types of premium pay for a biweekly pay period, but the sum of basic pay and premium pay may not exceed the greater of the biweekly rate payable for (1) GS-15, step 10 (including any applicable locality payment or special rate supplement), or (2) the rate payable for level V of the Executive Schedule. In its September 17, 2024 response, the agency explained that upon the appellant's removal, he was paid 40 hours of regular time for the first week of pay period 23, which amounted to $3,011.20. CRF, Tab 21 at 6. Accordingly, when the appellant was reinstated, the agency provided back pay only for the second week of pay period 2023, which also amounted to $3,011.20. *Id.* at 6-7. The biweekly pay cap at that time for the appellant's area was $6,022.40. *Id.* at 6. As the appellant had already earned the maximum pay under the biweekly pay cap for that pay period, the agency deducted, or did not pay, his LEAP pay of $752.80 for the second week. *Id.* at 6-8.

The appellant argues that the agency had already recaptured the $752.80 of LEAP pay by deducting a lump sum payment paid to the appellant on his initial separation, which included annual leave and LEAP pay, from the gross backpay. CRF, Tab 24 at 32-33. However, according to the agency's explanation, the appellant was not paid previously for the second week of pay period 23 and the $752.80 of LEAP pay for the second week of pay period 23 was not included in that lump sum payment. CRF, Tab 21 at 6-8; Tab 9 at 9. We find that the agency has proven by preponderant evidence that it is in compliance on this point.

TSP Contributions

Our July 18, 2024 Order directed the agency to address the appellant's calculations regarding his TSP contributions, explain why its evidence listed three different versions of the appellant's wages and different amounts for appellant's TSP contributions, and explain whether it had enabled the restoration of the appellant's TSP withdrawals to his account. CRF, Tab 18 at 13. First, regarding the different versions of the appellant's wages, the agency's September 17, 2024

response explained that confusing formatting, or typographical errors, as well as differences in whether the wages were categorized into fiscal year or calendar year, had led to the appearance of different versions of the appellant's wages. CRF, Tab 21 at 8-13. The agency's explanation set forth a detailed explanation reconciling the different numbers, and the appellant did not respond with respect to this issue. *Id.*; CRF, Tab 24. Accordingly, we find the agency has satisfied its burden on this point.

Second, the agency explained that its calculation of the appellant's employee contribution was $37,950.52, and did not include the $752.80 of LEAP pay discussed above. CRF, Tab 21 at 13-15. The agency also stated that it added a match of $41,460, which is greater than 5% of the back pay amount, and which inured to the appellant's benefit. *Id.* at 15. The appellant previously calculated that his TSP contribution and agency match should be $37,988.14, which appeared to be a result of including the disputed LEAP pay (CRF, Tab 12 at 83); more recently, the appellant calculated that both the appellant's contribution and the agency match should be $38,049.54. CRF, Tab 24 at 31. We find the agency in compliance on this point.

Third, regarding the appellant's request to restore distributed funds, the agency explained that under 5 C.F.R. § 1605.13(d), the right to restore distributed funds expired if the appellant failed to notify the TSP record keeper within 90 days of reinstatement. CRF, Tab 21 at 16. The agency states that it "cannot locate evidence that Appellant (the participant) complied with 5 C.F.R. § 1605.13(d) by notifying the TSP record keeper within 90 days" of either the administrative judge's order to reinstate the appellant on August 3, 2018, or of the agency's compliance with the Board's order, on June 26, 2023. *Id.* In response, the appellant claims that "the Agency was notified of the election to restore TSP withdrawals in the Back Pay Summary as of December 1, 2023." CRF, Tab 24 at 45. However, the regulation states that the participant must notify the TSP record keeper—not the agency—of his request to restore the distributed funds within

90 days of reinstatement. 5 C.F.R. § 1605.13(d). The appellant has shown no evidence that he did so. Accordingly, we find the agency in compliance on this point.[4]

Retirement Contributions Separate From the TSP

The July 18, 2024 Order directed the agency to provide an accounting of retirement contributions made separately from the TSP. CRF, Tab 18 at 13. The agency provided a table documenting its retirement contributions. CRF, Tab 21 at 18. The appellant does not provide specific challenges to the agency's calculations. Accordingly, we find the agency in compliance with respect to its retirement contributions separate from the TSP.

Medicare, Federal, and State Income Tax

The agency has provided a detailed accounting of the calculation of the Medicare, federal, and state taxes, as well as Social Security (or FICA) tax, which it properly withheld from the back pay. CRF, Tab 21 at 18-24; *see Tanaka v. Department of Navy*, 788 F.2d 1552, 1553 (Fed. Cir. 1986) (federal and state taxes were properly deducted from back pay award). The appellant argues that the agency has withheld too little tax due to using historical tax rates instead of current tax rates, and requests new W-2s. CRF, Tab 24 at 34. However, as noted in the Board's prior Order and Opinion on this matter, "the Board lacks authority to order a remedy for the tax consequences of a back pay award" and appellant must seek recourse in another forum. *Harris v. Department of Agriculture*, 53 M.S.P.R. 78, 82-83 (1992), *aff'd*, 988 F.2d Fed. Cir. 1993; *see also Quackenbush v. Department of Justice*, 45 M.S.P.R. 543, 544 (1990). Accordingly, we find the agency in compliance on this point but direct the agency to assist the appellant to the extent

---

[4] The appellant also argues in his October 7, 2024 response that the agency has calculated breakage for his TSP—defined as "the loss incurred or the gain realized on makeup or late contributions" in 5 C.F.R. 1605.1—incorrectly. CRF, Tab 24 at 42. The agency provided a detailed spreadsheet of the breakage calculations. CRF, Tab 21 at 36-42. The appellant raises no specific assertions regarding his argument that the breakage was calculated incorrectly; accordingly, we find that agency in compliance on this point.

possible by providing necessary forms or other assistance, including filing a Special Report with the Social Security Administration regarding the allocation of the appellant's back pay for the years 2014-2019. *See Harris*, 53 M.S.P.R. at 83.

Reporting Information to OPM

The July 18, 2024 Order directed the agency to explain whether the appellant's revised retirement date, salary information, sick leave accrual, and any other relevant information had been reported to OPM so as to effect any required adjustments to the appellant's annuity. CRF, Tab 18 at 13. The agency provided an email sending the appellant's individual retirement record to OPM. CRF, Tab 21 at 75-82. The appellant does not raise specific challenges to the agency's evidence, rather contending that the agency has failed to properly calculate the appellant's pension benefit resulting from his "high three" salary. CRF, Tab 24 at 15-16. However, OPM calculates such benefits, not the agency, and OPM is not a party to this appeal. *See Coffey v. United States Postal Service*, 77 M.S.P.R. 281, 286 (1998) (amount of retirement annuity payments was not properly before the Board in compliance case). Accordingly, the issue of the amount of appellant's pension benefit payments is not currently before the Board.

**ORDER**

The appellant's request for attorney fees is DENIED. The appellant may file a separate motion for attorney fees as set forth below.

As the appellant returned the previous payments the agency made to him, but we have resolved the amounts owed,[5] we ORDER the agency to pay the appellant

---

[5] The appellant continues to dispute issues that the Board decided in its previous July 18, 2024 Order, including that he is due a tax "gross-up" to compensate for the higher income taxes that are a result of his lump sum back pay. The Board will not revisit its prior opinion; however, we note that to the extent the appellant contends that he is due a tax gross-up as compensatory damages under the Whistleblower Protection Enhancement Act, he timely filed a separate compensatory damages motion pursuant to 5 U.S.C. § 1221(g)(1)(A)(ii), and was awarded $136,140. *Guzman v. Department of Homeland Security*, MSPB Docket No. SF-0752-15-0170-B-4, Initial Decision (Feb. 7, 2025). This payment is outside the scope of these compliance proceedings.

the entire back pay and interest amount of $415,368.23 no later than 60 days from the date of this Order. If the agency does not pay the back pay amount within that period of time, appellant may file a petition for enforcement with the office that issued the initial decision on appellant's underlying appeal. Such petition for enforcement shall be limited to whether the agency paid the amount set forth in this paragraph, and not the calculation of the amount.

In light of the foregoing, we find that agency is in compliance with its outstanding compliance obligations and dismiss the appellant's petition for enforcement and the compliance petition for review. This is the final decision of the Merit Systems Protection Board in these compliance proceedings. Title 5 of the Code of Federal Regulations, section 1201.183(c)(1) (5 C.F.R. § 1201.183(c)(1)).

## NOTICE TO THE APPELLANT REGARDING
## YOUR RIGHT TO REQUEST
## ATTORNEY FEES AND COSTS

You may be entitled to be paid by the agency for your reasonable attorney fees and costs. To be paid, you must meet the requirements set out at Title 5 of the United States Code (5 U.S.C.), sections 7701(g), 1221(g), or 1214(g). The regulations may be found at 5 C.F.R. §§ 1201.201, 1201.202, and 1201.203. If you believe you meet these requirements, you must file a motion for attorney fees WITHIN 60 CALENDAR DAYS OF THE DATE OF THIS DECISION. You must file your attorney fees motion with the office that issued the initial decision on your appeal.

## NOTICE OF APPEAL RIGHTS[6]

You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we

---

[6] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be <u>received</u> by the court within **60 calendar days** of <u>the date of issuance</u> of this decision. 5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

> U.S. Court of Appeals
> for the Federal Circuit
> 717 Madison Place, N.W.
> Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation

for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) Judicial or EEOC review of cases involving a claim of discrimination**. This option applies to you only if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination. If so, you may obtain judicial review of this decision—including a disposition of your discrimination claims—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** after you receive this decision. 5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. 420 (2017). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** after your representative receives this decision. If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues. 5 U.S.C. § 7702(b)(1). You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** after you receive this decision. 5 U.S.C. § 7702(b)(1). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** after your representative receives this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C.  20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C. 20507

**(3) Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012**.  This option applies to you <u>only</u> if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D).  If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[7]  The court of appeals must <u>receive</u> your petition for review within **60 days** of <u>the date of issuance</u> of this decision.  5 U.S.C. § 7703(b)(1)(B).

---

[7] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017.  The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction.  The All Circuit Review Act is retroactive to November 26, 2017.  Pub. L. No. 115-195, 132 Stat. 1510.

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.


FOR THE BOARD:          _____
                        *Gina K. Grippando*
                        Gina K. Grippando
                        Clerk of the Board

Washington, D.C.